UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**ALBERT DUNN ET AL**     **CASE NO.  2:22-CV-00980**

**VERSUS**     **JUDGE JAMES D. CAIN, JR.**

**ALLSTATE INSURANCE CO**     **MAGISTRATE JUDGE LEBLANC**

### MEMORANDUM RULING

Before the Court is a "Motion for Partial Summary Judgment" (Doc. 30) wherein Defendant, Allstate Insurance Company ("Allstate") move to dismiss Plaintiffs', Albert Dunn and Charlene Dunn's claims for penalties under Louisiana Revised Statute 22:1892 and 22:1973, outstanding depreciation, costs for an appraiser during the appraisal process, and mental anguish.

### BACKGROUND

On or about August 27, 2020, and October 9, 2020, Hurricanes Laura and Delta made landfall in the Lake Charles, Louisiana area.  During the relevant time period, Plaintiffs' property (dwelling, other structures, and personal property), was insured by Allstate. Allstate inspected the property on September 10, 2020, October 9, 2020, and again on May 13, 2021. Plaintiffs filed the instant lawsuit alleging breach of contract and bad faith against Allstate for its handling of the claim.

On September 14, 2022, Plaintiffs provided their Initial Disclosures per the Case Management Order ("CMO") and for the first time, provided Allstate an Unscheduled Personal Property list for $280,652.46; Plaintiff did not submit any supporting

documentation with the Personal Property list of alleged damage.[1] On October 14, 2022, the parties invoked the appraisal process per the terms of the policy. That process was finalized on June 5, 2023 and an appraisal award was issued. Allstate paid the difference between the appraisal award and prior payments within 30 days of June 5, 2023.[2] Prior to the aforementioned appraisal award, Allstate paid $500.00 for Plaintiff's damaged personal property.[3] Plaintiff received that check on September 21, 2020.[4] After the appraisal award, on June 5, 2023, Allstate paid Plaintiffs $160,157.96 for damaged personal property, $31,071.87 for additional living expenses ("ALE"), and $287,831.90 for the dwelling.[5] Below is a schedule of all the payments Allstate made to Plaintiffs prior to the appraisal, which was finalized on June 5, 2023:

| Coverage | Payments prior to Appraisal process |
|---|---|
| Dwelling | $63,660.48 |
| Personal Property | $ 500.00 |
| Other Structures | $54,200.00 |
| Building Code | $ 0.00 |
| ALE | $ 0.00 |
| Total | $118,360.48 |

Below is the schedule of payments made after the appraisal award on June 13, 2023:[6]

| Coverage | ACV Appraisal Award | RCV Appraisal Award | **Appraisal Payment** | Total Paid including pre-appraisal |
|---|---|---|---|---|
| Dwelling | $362,321.14 | $374,135.91 | **$287,820.66** | $351,481.14 |
| Personal Property | $160,157.96 | $340,367.03 | **$160,157.96** | $160,657.96 |
| Other Structures | $105,108.65 | $115,684.32 | **$ 13,550.00** | $ 67,750.00 |
| Building Code | $ 697.62 | $949.80 | **$ 697.62** | $ 697.62 |
| ALE/12 months | $ 0.00 | $ 31,071.87 | **$ 31,071.87** | $ 31,071.87 |

---

[1] Plaintiff's exhibit A, Charlene Dunn Declaration, ¶ papa 15 and 17.
[2] Defendant's exhibits B, F, and H.
[3] Id. ¶ 13.
[4] Plaintiff's exhibit A, ¶ 14.
[5] Id. ¶¶ 19 and 20.
[6] All amounts are based on both Plaintiffs' and Defendants briefs, with attached documents. However, it appears there may be a mathematical discrepancy as to the Total "RCV Appraisal Award."

| Total | $659,852.18 | $862,208.93 | **$493,298.11** | $611,658.59 |

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material

fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

In this lawsuit, Plaintiffs maintain that they are owed depreciation, bad faith penalties, additional living expenses, and attorney's fees. Allstate moves to dismiss Plaintiffs' claims for depreciation and penalties allegedly owed for unscheduled personal property, additional living expenses, other penalties, costs, and mental anguish. Plaintiffs inform the Court that they agree to dismiss their claim for mental anguish.

*Depreciation*

Plaintiffs were awarded $160,157.96 for actual cash value ("ACV") and $340,367.03 for replacement cost value ("RCV") in the appraisal award for their personal property. Plaintiffs are seeking $180,209.07 for depreciation. Defendant remarks that to be entitled to depreciation, the relevant insurance policy requires an insured to replace the personal property within 180 days of payment. Defendant argues that because Plaintiffs failed to repair or replace the personal property within the 180-day limitation in the policy, they are not entitled to the depreciation.

Defendants relies on a provision in the insurance policy between the parties, which provides that an insured can make a claim for additional payment "if you repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment."[7] Defendant argues that because Plaintiffs did not repair or replace the damaged

---

[7] Defendant's exhibit A, Allstate Insurance policy, pp. 16-17.

personal property within the 180 days after receiving payment for the appraisal award, they are prohibited from collecting the depreciation. Additionally, Defendant relies on policy provisions, which provides that if an insured does not repair or replace property, payment will be made based on ACV. See *Carey v. United Prop. & Cas. Ins. Co.*, 369 So.3d 1, *8 (La. App. 1 Cir. 5/25/23).

Allstate paid $160,157.96 for the ACV of the personal property claim on June 13, 2023, therefore, Allstate suggests that Plaintiffs had until December 10, 2023, to make repairs or replace the property to be entitled to the depreciation. Allstate relies on Mr. Dunn's deposition testimony wherein he admitted that no personal property had been repaired, rebuilt, or replaced, and no proof of the same has been provided to Allstate.[8]

Plaintiffs complain that Allstate's initial $500.00 payment was woefully short of the appraisal award of $160,157.96 for ACV and $340,367.03 for RCV. Plaintiffs also remark that they had insufficient funds to repair their dwelling and had to use these funds to make other repairs because they had to pay their attorney a 40% contingency fee plus costs, which resulted in them receiving only about half of the appraisal award.[9] Plaintiffs remark that Allstate had access to the interior of the residence to conduct any investigation as to their contents' claim. Plaintiffs note that it received the ACV amount some 300 days after Allstate received a detailed personal property list.[10] Plaintiffs argue that despite the funds they have received from Allstate, it is not enough to repair the interior of the home or to

---

[8] Defendant's exhibit D, Albert Dunn deposition, pp. 190-197; Plaintiff's Discovery Responses, p. 15.
[9] The Court notes that it has repeatedly held that a 40% contingency fee is exorbitant and not reasonable in these hurricane cases.
[10] Doc. 30-1, p. 3; Plaintiff's exhibit A, ¶ par a19-22.

replace and/or repair the contents of the home, and furthermore, Plaintiffs assert that it "makes little sense to buy personal property and contents and then incur the costs for storing those items while the home is being repaired."[11]

Here, the Court must determine if Plaintiffs are entitled to depreciation of personal property that has not been replaced or repaired. The policy language expressly states that the personal property must be replaced within 180 days to receive the depreciation. There is no dispute that Plaintiffs received payment for the personal property on June 13, 2023, and as of this date have not submitted any receipts or documentation that the personal property has been replaced, nor have they provided Allstate with any supporting documentation to support their personal property claim other than a personal property content list. Under the policy, Plaintiffs are entitled to actual cash value only until the personal property is either repaired or replaced, and according to the policy that time has now lapsed. Plaintiffs have not replaced or repaired the personal property, and as such are not entitled to depreciation.

*Penalties for personal property*

Plaintiffs are also asking for penalties for Allstate's bad faith handling of their personal property claim. Defendant argues that Plaintiffs cannot meet their burden of proof that they are entitled to said penalties because they did not provide Defendant with notice of loss as to the damaged personal property. Plaintiff produced their personal property contents list on September 14, 2022, appraisal was invoked by agreement of the parties on

---

[11] Doc. 34-1, ¶ 22.

October 14, 2022, and Defendant made payment for the contents (personal property) within 30 days of the appraisal award (June 13, 2023). Defendant argues that because it paid Plaintiff within 30 days of the appraisal award, it cannot be liable for penalties.

Defendant also argues that Plaintiffs failed to comply with the terms of the policy because they failed to provide any photographs of the damaged items, or any supporting documentation. Defendant relies on the policy, which explains what an insured should do after a loss. The policy provides that an insured must provide prompt notice of loss, a detailed list of the damaged or destroyed property and show the insurer the damaged property. Defendant remarks that it has repeatedly requested photographs of the damaged personal property, but Plaintiff refused to provide any. Specifically, Plaintiffs were asked to provide "any invoice(s) and/or receipts, photographs, itemizations, and other accountings for each damaged item included in your Contents List;" Plaintiff responded that they "do not have any additional documents other than what they previously produced in discovery and/or at deposition."[12]

To recover penalties under either statute, the plaintiff must demonstrate that the insurer (1) received a satisfactory proof of loss; (2) that the insurer failed to pay within the designated time period, and (3) that the failure to pay was arbitrary, capricious or without probable cause." *Island Concepts*, 2014 U.S. Dist. LEXIS 155494, 2014 WL 5524379 at *12 (citing *Boudreaux v. State Farm Mutual Automobile Ins. Co.*, 896 So. 2d 230, 233 (La. App. 4 Cir. 2005)). The bad faith statutes do not define "satisfactory proof of loss." The

---

[12] Defendant's exhibit E, Plaintiffs' Answers to Discovery, p. 14.

Louisiana Supreme Court has held that "satisfactory proof of loss" is "only that which is sufficient to fully apprise the insurer of the insured's claims." *La. Bag. Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1119 (La. 2008).

Here, Plaintiffs failed to comply with the terms of the insurance policy. The policy requires that Plaintiffs provide sufficient proof of loss and Plaintiff provided only a contents list on September 14, 2022, in their initial disclosures without any proof that the items in the contents' list were damaged or their values. In response to Request for Production of Documents No. 4, which requested that Plaintiffs provide "any e-mails, receipts, or other written or electronic proof of communication with Allstate where you produced your list of damaged contents," Plaintiffs responded with "Plaintiff objects to this request as it seeks information already in Defendant's Possession as part of its Claim File."[13] Plaintiffs were asked to provide "any invoice(s) and/or receipts, photographs, itemizations, and other accountings for each damaged item included in your Contents List." Plaintiffs responded with "Plaintiffs do not have any additional documents other than what they previously produced in discovery and/or at deposition."[14]

Defendant requested proof to support Plaintiffs' contents' claim list and the values contained therein, but Plaintiffs refused to provide any additional supporting documentation and further responded that they had no further documentation to support their claim. After the appraisal award, Defendant paid the award within 30 days. Plaintiffs

---

[13] Defendant's Exhibit D, p. 20.
[14] Defendant's Exhibit E, Plaintiffs' Answers to Discovery, p. 14.

have failed to provide any summary judgment evidence to show that they notified Defendant of a damaged contents' claim or provided the damaged contents list prior to their initial disclosures made on September 14, 2022, or that they provided Allstate sufficient proof (supporting documentation) of the damage and value of their personal property claim.

The Court finds that Plaintiffs have failed to establish that Allstate received sufficient proof of loss for their personal property claim that would start the timeline to make payment under the penalty statutes prior to the appraisal award. The Court does not equate an excel spreadsheet with unsupported line items and values as sufficient proof of loss. Allstate paid the appraisal award within 30 days of its issuance, and thus their payment was timely. Accordingly, because there is no genuine issue of material fact for trial as to bad faith penalties regarding Plaintiffs' personal property claim, this claim will be dismissed.

*Additional living expenses/ALE*

Plaintiffs contend that they have the right to pursue at trial their entitlement to additional living expenses as an additional measure of consequential damages under Louisiana Revised Statute 22:1973. Plaintiffs argue that due to the extensive repairs that remain to be completed, they will be forced to move out of the home while repairs are being made.

Defendant argues that Plaintiffs are not owed any further ALE, as it paid Plaintiffs $31,071.87 for ALE within 30 days of the appraisal award. Defendant informs the Court that Plaintiffs have continued to live in the house, but that they are claiming approximately

$264,000 for either a luxury motorhome rental or penthouse suite at L' Auberge for a full year. Defendants argue that Plaintiffs' request is not reasonable as required by the policy, nor is it owed due to the appraisal award.

Additionally, Defendants contend that Plaintiffs were asked to "disclose your monthly cost of living prior to August 27, 2020, and whether your cost of living changed in any way after August 27, 2020, and your method for calculation of these expenses." Plaintiffs objected that, "this interrogatory was overly broad, unduly burdensome, vague and ambiguous. Subject to its objection, Plaintiffs state that their cost of living has not changed."[15]

The policy provides that the insurer "will pay the reasonable increase in living expenses necessary to maintain your normal standard of living..."[16] Defendant relies on *Young v. State Farm Fire & Cas. Ins. Co.*, wherein the Court found that if there is no evidence that additional expenses were incurred or were required to maintain the plaintiff in a standard of living, there should be no award of ALE. 426 So.2d 636, 644 (La. App. 1 Cir. 1982). The Court finds that Plaintiffs' request for additional ALE is limited to the policy language, which expressly provides that such a request must be reasonable. Furthermore, Plaintiffs have failed to provide sufficient evidence to create a genuine issue of fact that their living expenses will be increased. Additionally, Plaintiff's request is not reasonable, and thus, not recoverable under 22:1973. The Court will dismiss Plaintiffs' request for ALE that is unsupported and exceeds the appraisal award.

---

[15] Defendant's exhibit D, Plaintiffs' Answers to Discovery, p. 15.
[16] Defendant's exhibit A, Allstate Insurance Policy, p. 13.

*Appraisal costs*

Here, Plaintiff contends that its appraisal costs are recoverable as an element of consequential damages. Plaintiff argues that it would not have had to incur costs for the appraisal process if Defendant had honored its obligation under the policy after its inspections.

Defendant contends that Plaintiffs are precluded as a matter of law from recovering costs related to the lawsuit. Defendant argues that there was a legitimate dispute as to the scope of damages, noting that Allstate's estimate was closer to the appraisal award whereas Plaintiffs' public adjuster's estimates was for over $1,000,000.00. The Court notes that the policy limit for the dwelling was $542,000.00. Both parties agreed with the appraisal process and Defendant paid the appraisal award within thirty (30) days. The policy provides the pertinent provision as to each parties' contractual obligation as follows: "Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.[17]

Here, there is a contractual obligation as to the insurer and insured. Pursuant to the clear language of the policy, Defendant has no obligation to be liable for Plaintiffs' costs for the appraisal process. Furthermore, Plaintiffs have failed to provide any evidence to support their claim for $78,000 in appraisal costs, which this Court considers to be exorbitant and entirely unreasonable. As such, the Court will dismiss this claim.

---

[17] Defendant's exhibit A, p. 18.

Page **11** of **14**

*Remaining penalties*

Defendant argues that Plaintiffs are not entitled to penalties under Louisiana Revised Statute 22:1892 and 22:1973 due to Defendant's compliance with the appraisal process and payment made within 30 days of the final appraisal award,[18] citing *Long v. Am. Security Ins. Co.*, 52 So.3d 260 (La. App. 4 Cir. 11/17/10); see also *Island concepts LLC v. Certain Underwriters at Lloyds*, 2014 WL 5524370 (E.D. La. 10/31/14); *Wells v. Southern Fidelity Ins. Co.*, 2019 WL 118015 (E.D. La. 1/7/19). Plaintiffs argue that Defendant's compliance with the appraisal process alone does not save Defendant from prior bad faith conduct, citing *Allied Trust Ins. Co. v. Junca*, 2023 WL 3119811 (E.D. La. Apr. 4, 2023) (find that an insured can demonstrate genuine issues of fact by presenting evidence or pre-appraisal bad faith behavior even if an insurer complies with the appraisal process). In *Junca*, the insured presented evidence that despite having full access to inspect the home on multiple occasions, the insurer's adjuster ignored portions of the damages and presented an estimate that was substantially less than was ultimately paid in the appraisal award. See also *Lee v. State Farm Fire & Casualty Co.*, 636 F.Supp.3d 704 (W.D. La. 2022). Defendant argues that there was a legitimate dispute as to the scope of damages as seen by the vast difference in the estimates for repairs to the dwelling.[19]

Defendant performed an initial inspection of Plaintiffs' home on September 10, 2020, and its adjuster estimated damage in the amounts of $34,198.00 (ACV) and $43,758.38 (RCV) for the dwelling and $55, 577.71 (ACV) and $64,078.66 (RCV) for

---

[18] Defendant's exhibits B, F, and H.
[19] Defendants inform the Court that there were numerous estimates with varying amounts from approximately $34,000 to over $1,000,000. Those estimates were not attached to the parties' briefs.

Page **12** of **14**

other structures. Defendant performed a second inspection on October 9, 2020, but made no adjustment to the claim. Plaintiffs retained counsel in November 2020. Afterwards, Defendant received Plaintiffs' public adjuster's estimate, which estimated $1,045,109.51 (RCV) for the dwelling, and $44,591.02 (ACV) for other structures.  On May 31, 2021, Defendant conducted a third inspection and estimated damage in the amounts of $83,035.00 (RCV) and $3,660.48 (ACV). It appears that Defendant had no further communications from Plaintiffs' counsel until April 2022.  Defendant remarks that they received another estimate from a Plaintiffs' second public adjuster which estimated $492,128.97 (RCV) for the dwelling and $55,949 (RCV) for other structures. Defendant remarks that that parties chose to proceed through the appraisal process because of the disparity in estimates and the dispute between the parties as to the scope of damages.

Here, Plaintiffs have provided only the self-serving affidavit of Charlene Dunn, to create a genuine issue of material fact for trial as to Defendant's alleged bad faith in handling their claim.  However, the initial adjustment by Defendant for the dwelling was dramatically lower than the appraisal award and Defendant had the opportunity to inspect the home on three different occasions. "Whether and when the insurer received satisfactory proof of loss sufficient to trigger the payment periods is a question of fact." *Lamar advert. Co. v. Zurich am. Ins. Co.*, 2021 WL 1113451, at *9 (M.D. La. Mar. 22, 2021). "An insurer does not arbitrarily and capriciously ... when it withholds payment based on a genuine (good faith) dispute about the amount of a loss or the applicability of coverage." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 297 (5th Cir. 2009)) (citing *Calogero v. Safeway Ins. Co. of La.*, 753 So.2d 170, 173 (La. 2000).

The Court finds that summary judgment in Defendant's favor is precluded by material issues of fact regarding whether Defendant had satisfactory proof of loss after the initial inspection and whether Defendant acted arbitrarily capriciously in its estimate of the damage. This will be a decision to be made by the jury.

## CONCLUSION

For the reasons explained herein, the Motion for Partial Summary Judgment" (Doc. 30) filed by Defendant, Allstate Insurance Company will be **GRANTED** in part and **DENIED** in part.  The Motion will be granted to the extent that Plaintiffs' claims for (1) reimbursement for depreciation as to personal property including bad faith penalties, (2) additional living expenses, (3) appraisal costs and, (4) mental anguish will be dismissed; Defendant's request to dismiss Plaintiff's bad faith penalty claim as to the dwelling will be denied and remains viable.

**THUS DONE AND SIGNED** in chambers on this 21st day of February, 2025.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**